EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

RONALD G. JOHNSON    #4532
Chief, Major Crimes

WES REBER PORTER    #7698
CLARE E. CONNORS    #7936
Assistant U.S. Attorneys
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, HI 96850
telephone:    541-2850
facsimile:    541-2958
e-mail:       wes.porter@usdoj.gov
              clare.connors@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00261 HG |
| | ) | |
| Plaintiff, | ) | UNITED STATES' OPPOSITION TO |
| | ) | DEFENDANT TROIANO'S MOTION TO |
| vs. | ) | SUPPRESS IDENTIFICATION; |
| | ) | EXHIBITS "A" AND "B"; |
| JAMES TROIANO,    (01) | ) | CERTIFICATE OF SERVICE |
| also known as: | ) | |
| "JOHN KLATT," | ) | |
| WENDELL K. TOKI,    (02) | ) | Hearing:  March 17, 2006 |
| | ) | Time:    9:00 AM |
| Defendants. | ) | Judge:   Helen Gillmor |
| | ) | |

**UNITED STATES' OPPOSITION TO DEFENDANT
TROIANO'S MOTION TO SUPPRESS IDENTIFICATION**

COMES NOW the United States of America, by and through

its attorneys, Edward H. Kubo, Jr., United States Attorney for

the District of Hawaii, Wes Reber Porter and Clare E. Connors,

Assistant United States Attorneys, and hereby submits its

opposition to Defendant JAMES TROIANO's ("TROIANO") "Motion to Suppress Identification" in the above-captioned case.  TROIANO argues that the victim's positive identification using a photographic line-up was unduly suggestive, unreliable and, therefore, must be suppressed.  TROIANO requests an evidentiary hearing hoping to uncover support for his motion.

The victim's identification of TROIANO from a photographic line-up depicting similar-looking, shirtless males with mustaches and bushy hair was not "impermissibly suggestive" as a matter of law.  The Court, after reviewing the photographic array (attached as Exhibit "B" hereto), will find that the photographic array in the instant case was not impermissibly suggestive and that TROIANO's motion to suppress must be DENIED without an evidentiary hearing.  As in his other motions before the Court, TROIANO wishes to gain an evidentiary hearing on any matter to improve his posture at trial.

*Assuming arguendo* that the Court finds the identification procedure was impermissibly suggestive, the Court must then weigh whether the victim's identification was, nevertheless, reliable under the totality of the circumstances.  Here, the factors would unquestionably favor reliability of the identification evidence and, therefore, admissibility of the evidence at trial.

Accordingly, TROIANO's motion to suppress must be DENIED.  The concerns raised in his motion should go to the weight of the evidence, not its admissibility.

2

I.    <u>BACKGROUND FACTS</u>

        The United States agrees with most of the facts set forth in TROIANO's motion.  For the sake of clarity, however, the United States will first recount the facts that are material to the motion and not in dispute, and then identify the "facts" that the United States believes are misleading, unsupported and, therefore, should not be considered for this motion.

        The following facts set forth in TROIANO's motion are not in dispute:

- On May 9, 2005, the victim in the instant case, Milton Agader ("Agader") was the owner of, and only person present in, the Brown Bottle store when it was robbed.

- On May 9, 2005, Agader provided an audio-taped statement to HPD detectives.

- On May 13, 2005, Agader, working with a sketch artist, prepared a composite drawing of the "robber."

[<u>See</u> Composite Drawing, Exhibit "A."]

- On May 15, 2005, HPD Detective Brian Johnson showed Agader a photographic line-up packet, containing a explanation form and a "six-pack" of photographs.

[<u>See</u> Photo Line-up Packet, Exhibit "B."]

- Agader positively identified TROIANO, depicted in photo #5, by stating that this person "I think is the taller of the two suspects."

The following "facts" set forth in TROIANO's motion are misleading or speculative, and, therefore should not be considered by the Court.

- TROIANO alleges that, in Agader's statement, Agader indicated that the suspect had "reddish" or "brownish" hair, yet all of the photos in the array other than TROIANO's depict males with dark or black hair.

[Def. Mot. at 3.]

As shown in Exhibit "B", Agader was shown a black and white photographic array.

- TROIANO next alleges that "[t]wo days after the robbery, May 11, 2005, [he] was arrested."

[Def. Mot. at 2.]

TROIANO was arrested on May 11, 2005, two days after the robbery in the instant case.  However, he was arrested by the State of Hawaii on an Unlawful Control of a Propelled Vehicle ("UCPV") charge.  His state arrest was not based upon his involvement in the robbery at the Brown Bottle and has no bearing on the alleged suggestiveness of the ensuing identification by Agader.  TROIANO's state arrest is separate and apart from the charges he presently faces in this case.

As discussed below, it is critical to the analysis to determine whether formal charges are brought before or after the witness makes an out-of-court identification.  On May 19, 2005, four days after Agader viewed the photographic array, TROIANO was charged by Complaint for the Brown Bottle Robbery.  A Hawaii

Grand Jury returned a three-count Indictment against TROIANO on June 22, 2005, and on October 5, 2005, the same Grand Jury returned a Superseding Indictment.

● TROIANO next asserts, without a supporting declaration or other evidence, that "it is believed that he [Agader] was shown a photograph of TROIANO prior to May 15, 2005." [Def. Mot. at 3].

TROIANO includes this off-handed comment as part of his "factual circumstances" section. In so doing, he inserts a single, alleged "fact" that, if it were supported by evidence, would dictate the Court's ruling on the motion. The United States cannot be made to respond to such speculation. If TROIANO has support for this speculative assertion, he should submit it to the Court. If not, the comment is irrelevant. It is in this vein that TROIANO improperly calls for an evidentiary hearing, hoping, it appears, to confirm such speculation.

II.  <u>DISCUSSION</u>

The Due Process Clause of the Fifth Amendment prohibits identification testimony derived from procedures that are impermissibly suggestive and may lead to mistaken identification. <u>Stovall v. Denno</u>, 388 U.S. 293, 302 (1967).  Law enforcement officers are required to make every reasonable effort under the circumstances to conduct a fair and balanced presentation of alternative possibilities for identification, but they are "not required to conduct a search for identical twins in age, height, weight or facial features." <u>Hensley v. Carey</u>, 818 F.2d 646, 650 (9th Cir. 1987).  Viewing the totality of the circumstances,[1] this Court must decide whether the procedure created a "very substantial likelihood of irreparable misidentification." <u>United States v. Davenport</u>, 753 F.2d 1460, 1462 (9th Cir. 1985).  Here, it is difficult to imagine what the detectives could have done to create a more fair and balanced presentation of a photo array during an identification procedure.[2]

The Court must engage in a two-step analysis to determine the admissibility of identification testimony. <u>Biggers</u>, 409 U.S. at 198-200.  <u>First</u>, the defendant must prove

---

[1]  The totality of the circumstances of an identification procedure includes the detailed photographic line-up form used by HPD.  See Exhibit "B."  The form carefully instructs the witness about the procedure, cautions the witness about the dangers of misidentification and has the witness attest that s/he was not influenced or coerced.  <u>Id.</u>

[2]  Other witnesses in this case viewed the same photographs in an array that differed only in numerical arrangement.  Not all were able to identify TROIANO from the other males depicted.

that the identification procedure was impermissibly suggestive. Id. at 198-99; United States v. Kessler, 692 F.2d 584, 586 (9th Cir. 1982) (holding that "at least some level of suggestibility is legitimate"). In the Ninth Circuit, if the Court finds that the challenged procedure is not impermissibly suggestive, the inquiry into the due process claim ends. See United States v. Bagley, 772 F.2d 482 (9th Cir. 1985); United States v. Davenport, 753 F.2d 1460, 1463 & n.2 (9th Cir. 1985); United States v. Love, 746 F.2d 477, 478 (9th Cir. 1984). If the Court finds the procedure impermissibly suggestive, automatic exclusion of identification testimony is not required, but the Court must then consider the reliability factors. See Manson, 432 U.S. at 113-14; Biggers, 409 U.S. at 199-200.

Second, if, and only if, the identification procedure is found to be impermissibly suggestive, the Court must determine whether the identification was, nonetheless, reliable. Biggers, 409 U.S. at 199-200. If under the totality of the circumstances the identification is sufficiently reliable, identification testimony may be allowed into evidence even if the identification was made pursuant to an unnecessarily suggestive procedure. The Court weighs reliability using the following five factors set out in Biggers: (1) opportunity to view the defendant at the time of the crime; (2) the witness' degree of attention at the time of the crime; (3) the accuracy of the witnesses description prior to the identification; (4) the witnesses level of certainty; and (5) the length of time elapsed between the crime and the

7

identification.  <u>Id.</u>  Lastly, the Court may consider the weight of the other evidence against the defendant in its reliability determination.

    A.   <u>First Prong: "Impermissibly Suggestive"</u>

       An identification procedure is suggestive when it "emphasize[s] the focus upon a single individual" thereby increasing the likelihood of misidentification.  <u>United States v. Bagley</u>, 772 F.2d 482, 493 (9th Cir. 1985).  In <u>Bagley</u>, the Ninth Circuit held that a show-up identification procedure was ***not*** impermissibly suggestive and, thus, the Court "need not reach the question whether the teller's identification was reliable under the test enumerated in <u>Biggers</u>."  <u>Id.</u>  The defendant has the burden to prove undue suggestiveness and therefore must advance some theory of how the out-of-court identification procedure was unduly suggestive.[3]  Here, as discussed below, TROIANO fails to assert how the identification procedure in the instant case was

_____

   [3]  For instance, a one person show-up can be suggestive. <u>See</u> <u>Stovall</u>, 388 U.S. at 302 ("The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned"); <u>Clark v. Caspari</u>, 274 F.3d 507, 511 (8th Cir. 2001)(show-up was suggestive where the defendant was alone, in handcuffs and surrounded by law enforcement).  In addition, the circumstances surrounding a photo array could be suggestive.  <u>See</u> <u>United States v. Buuthot</u>, 878 F.2d 1506, 1513-14 (1st Cir. 1989)(witness was shown the photo array after he saw the defendant brought to court for the same crime).  Finally, an in-court identification can be suggestive. <u>See</u> <u>United States v. Emanuel</u>, 51 F.3d 1123, 1131 (3d Cir. 1995)(a witness was unable to identify the defendant pre-trial, yet positively identified the defendant after seeing him in handcuffs and accompanied by marshals).

suggestive at all.  It appears TROIANO hopes to develop such a theory during the course of an evidentiary hearing.

    B.    **The Victim's Positive Identification of TROIANO From a Photographic Line-Up Was Not Impermissibly Suggestive**

TROIANO moves to suppress identification testimony as unreliable despite the objectively fair and balanced presentation of the photographic array now before the Court.  In support of his motion, TROIANO confines his argument to "reliability" and the <u>Biggers</u> factors discussed above.  In so doing, TROIANO ignores the two-step analysis.  As discussed above, whether an identification procedure was "impermissibly suggestive" is a ***threshold determination*** for the Court*,* as opposed to just another factor in the analysis.  <u>See Biggers</u>, 409 U.S. at 198-99.  In his 15-page motion to suppress, TROIANO fails to articulate how the identification procedure in the above-captioned case is suggestive.  <u>See</u> Def. Mot. at 4-5.  Accordingly, TROIANO fails to carry his burden to demonstrate suggestiveness and his motion to dismiss must be DENIED without an evidentiary hearing.

The Court, in denying TROIANO's blanket challenge to the photographic line-up identification, need only review the content of the photographic display.  <u>See</u> Exhibit "B."  Only photographic arrays which emphasize the focus upon a single individual increase the danger of misidentification.  <u>Simmons v. United States</u>, 390 U.S. 377, 382-83 (1968); <u>United States v. Hanigan</u>, 681 F.2d 1127, 1133 (9th Cir. 1982).  In this case, all photos used in the lineup were obtained from photos on record

with HPD and all were in black and white.  The photos in the
line-up depict similar-looking, shirtless males with mustaches
and bushy hair.  The persons pictured along with TROIANO all had
similar characteristics.  Without knowing which photo is of
TROIANO, a reasonable person could not identify a photo that is
different from the others.  The identification procedure
implicating TROIANO was not "impermissibly suggestive" as a
matter of law.

        In the absence of any evidence presented by TROIANO,
there is no due process violation.  The victim, Agader, was
informed in writing that he need not make an identification.  <u>See</u>
Exhibit "B."  TROIANO does not suggest how others, such as law
enforcement, may have increased the suggestibility of the
procedure, particularly when Agader attested that his positive
identification was not the product of influence or coercion.  <u>Id.</u>
Moreover, the victim's perceptions are noted in police reports
and counsel will be able to cross-examine him at trial about any
deficiencies at the lineup or in his perception.  <u>United States
v. Bowman</u>, 215 F.3d 951, 965-66 (9th Cir. 2000).  TROIANO fails
to point to any reason for an evidentiary hearing.

        Accordingly, the photographic array procedure in this
case simply does not give rise to "a very substantial likelihood
of irreparable misidentification" and must be left for the jury
to weigh.  <u>Manson</u>, 432 U.S. at 116.  As Justice Blackmun set
forth in <u>Manson</u>, "[w]e are content to rely upon the good sense
and judgment of American juries . . . [for they] are not so

susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." Id. Viewing the totality of the circumstances, the Court cannot say that the procedure created a "very substantial likelihood of irreparable misidentification." United States v. Davenport, 753 F.2d 1460, 1462 (9th Cir. 1985).  Accordingly, TROIANO's motion to suppress should be denied without an evidentiary hearing because the procedure was not impermissibly suggestive.

     C.   Second Prong: Reliability

       Furthermore, even an impermissibly suggestive pretrial identification does not automatically require exclusion of identification testimony, if the totality of the circumstances shows the identification to be reliable.  See Neil v. Biggers, 409 U.S. 188, 199-200 (1972).  The reliability of identification testimony is determined by "(1) the witness' opportunity to view the defendant at the time of the incident; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the defendant; (4) the level of certainty demonstrated by the witness at the time of the identification procedure; and (5) the length of time between the incident and the identification." Hernandez, 35 Fed. Appx. at 303; accord Biggers, 409 U.S. at 199-200.  Lastly, the Court may consider the weight of the evidence in determining reliability of the positive identification.  Here, there is ample support for the reliability of Agader's pretrial identification.

     D.   Assuming Arguendo, the Identification Procedure
        Was Reliable

Weighing the <u>Biggers</u> factors in the instant case favors reliability and admissibility of the identification testimony at trial.  First, Agader had an opportunity, albeit a brief opportunity, to view TROIANO during the robbery when TROIANO's bandana dropped and his face was exposed.  Agader thereafter provided a detailed and accurate description and was able to work in conjunction with a sketch artist to come up with a composite sketch of the armed robber.  <u>See</u> <u>United States v. Rose</u>, 362 F.3d 1059, 1066 (8th Cir. 2004)(holding the identification reliable because the witness provided a detailed and accurate description).

Second, Agader was the lone victim of a violent confrontation during an armed robbery of his own store.  Agader had the very highest degree of attention and was not a witness in passing or even a disinterested customer.  <u>See</u> <u>United States v. Burbridge</u>, 252 F.3d 775, 780-81 (5th Cir. 2001) (describing a reliable identification because the witness was very attentive during the *armed robbery*); <u>Dunnigan v. Keane</u>, 137 F.3d 117, 129 (2d Cir. 1998) (holding the identification reliable because the witness was *not a casual observer*).

Third, Agader's witness description substantially matches TROIANO and his composite sketch bears resemblance as well.  <u>See</u> Exhibit "A."  As discussed above in evaluating the first factor, Agader's description and ability to create a drawing that resembles TROIANO favors admissibility.

Fourth, Agader stated that he "thought" the TROIANO photo was "the taller of the two suspects." See Exhibit "B." In fact, TROIANO is the taller of the two armed robbers, as his co-defendant Tony ESPARZA is shorter than TROIANO. This factor must be considered against the backdrop of the line-up form used by the police here. See Exhibit "B."

Fifth, Agader positively identified TROIANO on May 15, 2005, six days after he was robbed and assaulted with a firearm on May 9, 2005. United States v. Plunk, 153 F.3d 1011, 1022 (9th Cir.), amended by, 161 F.3d 1195 (9th Cir. 1995)(holding that the identification was reliable even after almost 7 *months* has elapsed); see also United States v. Rogers, 126 F.3d 655, 659 (5th Cir. 1997)(holding that an identification 10 *months* after the crimes raises concerns about a witness' memory).

Lastly, the Court must look to the strength of the other evidence against the defendant to make a reliability determination. Kennaugh v. Miller, 289 F.3d 36, 48 (2d Cir. 2002); Rogers, 73 F.3d at 778; Gilday v. Callahan, 59 F.3d 257, 270 (1st Cir. 1995). As is evident from the voluminous discovery in this case, the United States anticipates the evidence against TROIANO will be overwhelming. In addition, the jury will hear from TROIANO's co-conspirator, Tony Esparza, who will testify regarding the details of the crime, including how TROIANO orchestrated the robbery. When considered in conjunction with the other factors discussed above, the balancing test favors reliability and admissibility of the identification evidence.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, TROIANO's motion to suppress must be DENIED because the identification procedure here was not unduly suggestive.  Alternatively, if the Court were to find it

was impermissibly suggestive, then the Court must nonetheless find the procedure reliable and admissible.

DATED:  March 9, 2006, at Honolulu, Hawaii.

Respectfully submitted,

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By   /s/ Clare E. Connors
   WES REBER PORTER
   CLARE E. CONNORS
   Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document was served on March 9, 2006, to the following person(s):

Todd W. Eddins, Esq.
1001 Bishop Street
Pauahi Tower, Suite 1320
Honolulu, Hawaii  96813

Attorney for Defendant
JAMES TROIANO

**BY:  MAIL ( X )    HAND (  )**

Pamela E. Tamashiro
Ocean View Center
707 Richards Street, PH 7
Honolulu, Hawaii  96813

Attorney for Defendant
WENDELL R. TOKI

**By:  MAIL ( X )    HAND (  )**

DATED:  March 9, 2006, at Honolulu, Hawaii.


      /s/ Iris Tanaka