EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

RONALD G. JOHNSON   #4532
Chief, Major Crimes

WES R. PORTER      #7698
CLARE E. CONNORS   #7936
Assistant U.S. Attorneys
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, HI 96850
telephone:    541-2850
facsimile:    541-2958
e-mail:       wes.porter@usdoj.gov
              clare.connors@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00261 HG |
| | ) | |
| | ) | UNITED STATES' CONSOLIDATED |
| Plaintiff, | ) | OPPOSITION TO DEFENDANT |
| | ) | TROIANO'S MOTION TO DISMISS |
| | ) | INDICTMENT OR TO EXCLUDE |
| vs. | ) | TESTIMONY OF CATHERINE |
| | ) | SYMONDS; MOTION TO DISMISS |
| | ) | INDICTMENT OR TO SUPPRESS |
| JAMES TROIANO,        (01) | ) | PROSECUTION EVIDENCE RELATING |
| also known as: | ) | TO AUDIOTAPED FEDERAL |
| "JOHN KLATT," | ) | DETENTION CENTER PHONE CALLS |
| WENDELL K. TOKI,      (02) | ) | BY DEFENDANT; MOTION TO |
| | ) | DISMISS COUNTS 3 AND 4; |
| Defendants. | ) | DECLARATION OF COUNSEL; |
| | ) | EXHIBITS A-G; CERTIFICATE OF |
| | ) | SERVICE |
| | ) | |

**UNITED STATES' CONSOLIDATED
OPPOSITION TO DEFENDANT TROIANO'S MOTION
TO DISMISS INDICTMENT OR TO EXCLUDE TESTIMONY
OF CATHERINE SYMONDS; MOTION TO DISMISS INDICTMENT OR
TO SUPPRESS PROSECUTION EVIDENCE RELATING TO AUDIOTAPED
FEDERAL DETENTION CENTER PHONE CALLS BY DEFENDANT;
<u>MOTION TO DISMISS COUNTS 3 AND 4</u>**

COMES NOW the United States of America, by and through its attorneys, Edward H. Kubo, Jr., United States Attorney for the District of Hawaii, Wes R. Porter and Clare E. Connors, Assistant United States Attorneys, and hereby submits its consolidated opposition to defendant James Troiano, also known as "John Klatt's," (1) Motion to Dismiss Indictment or to Exclude Testimony of Catherine Symonds; (2) Motion to Dismiss Indictment or to Suppress Prosecution Evidence Relating to Audiotaped Federal Detention Center Phone Calls by Defendant; and (3) Motion to Dismiss Counts 3 and 4, filed on February 27, 2006. Troiano's motions are without merit and should be denied.

**I.    <u>BACKGROUND</u>**

**A.    FACTS RELATED TO THE
<u>ROBBERY OF THE BROWN BOTTLE</u>**

The evidence at trial will demonstrate that in the early morning hours of May 9, 2005, defendant James Troiano ("Troiano") attacked M.A., the owner of The Brown Bottle, a liquor store in Waialua, as he entered the store. Troiano hit M.A. in the face with a gun and forced him inside the store. Troiano and Tony Esparza ("Esparza") then proceeded to take with

1

force approximately $2,000 from the safe located underneath the cash register and approximately $12,000 from the automated teller machine ("ATM") located in the store.  During the course of the robbery, Troiano and Esparza alternated holding M.A., who was bleeding from his wound, at gunpoint on the ground.

After they left The Brown Bottle, Troiano and Esparza checked into the Ohana Waikiki Surf Hotel.  Troiano used a license in the name of "John Klatt," which he had stolen from John Klatt's residence on April 13, 2005, and Esparza used his Hawaii identification card.  The Honolulu Police Department arrested Troiano on May 10, 2005, and thereby prohibited him from returning to the hotel room.  Hotel security eventually entered the room and found in the safe, among other things, a Colt .45 pistol and approximately $4,000 in U.S. currency.

Prior to the robbery on May 9, 2005, Troiano and co-defendant Wendell Toki ("Toki") discussed the layout of The Brown Bottle, including the location of the safe in the floor and the fact that M.A. had the combination to the ATM.  Toki was familiar with The Brown Bottle because his mother, Helen Toki, worked there.  Toki also had worked there and knew M.A.'s routine.  Toki told Troiano that on Monday mornings, the safe contained the proceeds from the weekend.  In addition, the United States will prove that Toki asked Troiano not to rob The Brown Bottle while his mother was performing her cleaning duties.  Following the

robbery, Troiano provided defendant Toki with $5,000, Toki's share of the money taken from The Brown Bottle.

B.    **PROCEDURAL BACKGROUND**

On June 22, 2005, a Grand Jury sitting in Honolulu, Hawaii, returned an Indictment against Troiano and Toki.  On October 5, 2005, the same Grand Jury returned a Superseding Indictment against Troiano and Toki.

II.  **DISCUSSION**

A.    **CATHERINE SYMONDS TESTIMONY IS ADMISSIBLE**

In this Motion, Troiano again attempts to exclude testimony of Catherine Symonds.[1]  Because he has failed to present any evidence to support his argument, his Motion does not warrant an evidentiary hearing and should be denied.

Troiano argues in this Motion that "confidential information and matters at a sealed courtroom hearing on August 8, 2005 were disclosed to Ms. Symonds two days after the hearing."  Motion, 1-2.  As this Court will recall, at the August 8, 2005 hearing the Court cleared the courtroom of all individuals aside from Troiano, his defense counsel, two Deputy United States Marshals assigned to Troiano, and courtroom

---

[1]Troiano's prior counsel filed a Motion in Limine requesting the Court to suppress the testimony of Catherine Symonds.  The United States filed its opposition on August 12, 2005.

personnel.[2]  Troiano now asserts that the Deputy United States
Marshals revealed matters that occurred during the hearing and
that this information was relayed to Catherine Symonds when she
was served with her trial subpoena.

Troiano provides no evidence that anyone from the
United States Marshal's office divulged to Ms. Symonds
confidential matters that occurred at the hearing.  Instead,
Troiano relies on a third-party account of Ms. Symonds' alleged
conversation with his mother, Linda Corpe, during which Ms. Corpe
attempts to recount Ms. Symonds' conversation with a government
agent.  See Exhibit A (Unofficial transcript of August 12, 2005
phone call between Troiano and Linda Corpe).[3]  Ms. Corpe tells
Troiano that Ms. Symonds had a conversation with a government
agent at the time she was served with her trial subpoena and that
the agent said Troiano "keeps firing" all of his attorneys.
Notably, nothing in the conversation suggests that confidential
information from the hearing was divulged.  To the contrary, the
public record confirms that on August 8, 2005, Troiano's second
appointed defense counsel filed a motion for withdrawal and that
this Court held a hearing on the motion.

---

[2]Troiano's counsel inaccurately asserts that Troiano
appeared without counsel.  Memorandum of Law, 1.  The undersigned
has spoken to Troiano's prior counsel, Harlan Kimura, who
confirmed that he was present during the sealed hearing.

[3]In a separate letter, the United States has provided the
Court a CD-copy of all phone calls obtained from FDC.

4

As is evident from the attached affidavit of Detective
Brian Johnson, Detective Johnson served the trial subpoena on Ms.
Symonds on August 11, 2005.  See Exhibit B.  Prior to serving the
subpoena, Detective Johnson had no contact with the United States
Marshals office or with any individual Deputy United States
Marshal, including anyone present at the hearing.  Detective
Johnson himself was not present at the hearing and was not privy
to the sealed portions of what transpired during the hearing.

Even assuming Detective Johnson discussed the status of
the case with Ms. Symonds, such a conversation is not improper.
As the date of the trial is an issue that concerns Ms. Symonds,
who will testify, no impropriety exists with Detective Johnson
advising Ms. Symonds that the trial could be delayed because
Troiano was seeking new counsel.  If that were to occur, as it
ultimately did, the trial could be continued to allow the new
attorney time to become familiar with the case.

Any additional off-the-cuff observations or statements
Detective Johnson may have made, including that Troiano's actions
were aggravating the Court, do not constitute a valid basis for
asserting that the United States tampered with prospective
witnesses or otherwise engaged in outrageous government conduct,
which appears to be Troiano's underlying accusation.  Had
Detective Johnson requested that Ms. Symonds testify in a
particular manner, or that she take some type of action on behalf

5

of the United States, e.g., had he said something to the effect of "the Court is upset at Troiano and you should talk to him about it" or "you should change your testimony because of it," Troiano may have had a cognizable claim.  However, Troiano has presented no evidence to support such an accusation.

Troiano also has presented no evidence to suggest that Ms. Symonds "discussed certain confidential matters with employees (and potential government witnesses) at the Brown Bottle liquor store." Memorandum, 2.  Because Troiano has failed to establish that Ms. Symonds obtained confidential information from the sealed hearing on August 8, 2005, he necessarily fails to establish that Ms. Symonds shared any such confidential information with other prospective witnesses.  Moreover, he does not mention a single name of any "potential government witness" with whom Ms. Symonds may have spoken.

The United States cannot prevent Ms. Symonds from contacting potential witnesses.  Such contact is problematic only if Ms. Symonds were to contact another witness at the behest of the United States.  Troiano has presented no evidence to suggest that Ms. Symonds was directed by the United States to discuss factual circumstances of the case with other potential witnesses.  Moreover, defense counsel can question Ms. Symonds at trial about any contact she had with other witnesses.

In light of the above, Troiano has not met his burden of showing an evidentiary hearing is warranted.  If, however, the Court decides to hold an evidentiary hearing, the United States will ensure the appearance of Detective Brian Johnson.

**B.    PHONE CALLS MADE BY TROIANO FROM THE FEDERAL DETENTION CENTER ARE PROPERLY WITHIN THE POSSESSION OF THE UNITED STATES**

**1.    FDC acted in accordance with the provisions of the Ex Parte Application, Declaration, and Order**

Troiano argues that because the United States obtained possession of audio-taped telephone calls he made from FDC, which he initially requested pursuant to an Ex Parte Application for Issuance of a Subpoena, the Court should dismiss the case or prevent the United States from using the conversations in its case.[4]  Counsel for Troiano states in his declaration that although he did not obtain a copy of the Court's Ex Parte Order, he is "aware that the court granted the request and issued an order permitting Troiano to serve the Federal Detention Center's custodian of records with a subpoena relating to the phone records."  Declaration of Counsel, 2, ¶ 5.  Indeed, the Court did grant such a request and the ex parte application, declaration, and order were filed under seal.  See Exhibit C.[5]

---

[4]Presently, the United States does not intend to use the audio-taped conversations.

[5]The United States will provide Exhibit C in a separate, sealed container to prevent it from being publicly filed.

In reviewing the ex parte application, the declaration of counsel, and the Court's order, there is no mention that these documents are to be sealed from the prosecution.  In fact, the ex parte application indicates that the document is "FILED UNDER SEAL PURSUANT TO AMENDED GENERAL ORDER REGARDING GUIDELINE SENTENCING, filed on August 22, 1990."  This mechanism for sealing documents is the same as the one employed during sentencing litigation, when both parties are aware of the proceedings and they are sealed only from the public.

When the FDC receives a request for documents, an FDC attorney contacts the United States Attorney's Office; generally, the attorney contacts the prosecutors directly.[6]  If it is "under seal," the FDC still contacts the United States Attorney's office, though usually it does not contact the prosecutor involved with the case.  If the Court's order specifically requires that the prosecutors assigned to the matter not be advised of the subpoena's existence, the Assistant United States Attorney responsible for handling the subpoena will not do so unless circumstances require otherwise.

---

[6] The case law provides that in certain contexts, files in the possession of the Bureau of Prisons may be considered within the possession and control of the United States Attorney.  United States v. Santiago, 46 F.3d 885, 894 (9th Cir. 1995).  Thus, for discovery purposes a subpoena on the Bureau of Prisons is like a request for discovery from the United States Attorney's Office. Santiago, 46 F. 3d at 894 (citing United States v. Boyd, 833 F.Supp. 1277, 1357 (N.D.Ill. 1993)).

Troiano asserts that "[t]hrough declaration of counsel, [Troiano] provided a rationale for the request." Mem., 1-2. As is evident from a review of the sealed application, declaration, and order, Harlan Kimura, Troiano's previous counsel, cites no "rationale" for keeping these documents sealed from the prosecutors. Troiano's present counsel states in his declaration that "[i]n a letter dated August 30, 2005 to Troiano, Mr. Kimura explained that the request was sealed to prevent the government from reviewing the matter." Decl., 2, ¶ 6 (emphasis added). However, Mr. Kimura did not provide such an explanation in the application, the declaration, or the Court's order. Neither the FDC nor the United States Attorney's Office received a copy of the letter to Troiano. Accordingly, FDC was not on notice that defendant intended that the order be sealed from the prosecution.

Even if Mr. Kimura originally intended that the order be sealed from the prosecution, he raised no objection and took no additional action to keep the details of the request from the prosecutors. Although the prosecution knew of the order, it had not seen the actual subpoena and did not know the specific details of the request. As evidenced by a September 14, 2005 letter, Mr. Kimura knew the prosecutors had been advised of the order and he nevertheless decided to work with the government to obtain the phone calls. See Exhibit D, 2. Had Troiano's counsel raised an objection at the time he learned the prosecutors knew

of the order, he could have elected not to advise them of what documents were the subject of the subpoena.  He could have clarified his intention to keep the details of the subpoena sealed from the prosecution, which would have been respected.

Instead, Mr. Kimura agreed to work with the prosecutors to obtain the records.  As evident from the letter, Mr. Kimura specifically advised the prosecution of the documents he sought. Irrespective of whether Troiano's present counsel has not seen this letter or intentionally ignored it, the letter represents an understanding between the parties that Troiano now seeks to undermine.

### 2.    Troiano has suffered no prejudice by disclosure of the audiotapes to the prosecutors

In any event, Troiano fails to establish that he has suffered any prejudice from the fact the prosecution is in possession of the audiotapes.  First, since the United States made a reciprocal <u>and continuing</u> request for discovery on June 27, 2005, the audio-tapes should have been provided to the United States, assuming compliance by the defense with Rule 16 of the Federal Rules of Criminal Procedure.[7]  <u>See</u> Exhibit E.

---

[7] It appears the defense is in possession of additional documents that it has not yet turned over to the United States. In Exhibit F, Troiano's mother, Linda Corpe, references phone records she retrieved at her son's request.  The United States reiterates its request for reciprocal discovery.

If not as a result of discovery, the United States would be aware of the audio-tapes by this time anyhow. In his declaration, Mr. Kimura states that he sought the tapes because "[t]he substance of those telephone conversations between Troiano and the Government Witnesses may provide grounds for Motions In Limine requesting the exclusion of their testimony." Declaration of Harlan Y. Kimura, ¶ 4. This intent is confirmed by the fact that Troiano did file a companion motion to exclude the testimony of Catherine Symonds based on third-party representations made in the taped conversations. See supra. Thus, the United States would have become aware that Troiano had these audiotapes in his possession more than a month before trial. Accordingly, the United States would have reiterated its reciprocal request for documents pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure. If the defense failed to supply the tapes, the United States would have acquired the tapes on its own from FDC.

Troiano argues that his trial defense was compromised by the release of the audiotapes to the prosecution, thereby constituting a violation of his Fifth and Sixth Amendment rights. Memorandum, 3. However, no viable trial defense exists with respect to these tapes. The statements made by Troiano during the conversations constitute self-serving hearsay, which Troiano is prohibited from introducing pursuant to Rule 801(d)(2) of the Federal Rules of Evidence. See United States v. Ortega, 203 F.3d

11

675, 682 (9th Cir. 2000); <u>United States v. Fernandez</u>, 839 F.2d 639, 640 (9th Cir. 1988) (per curiam).  If the audiotapes were subpoenaed solely for impeachment purposes, the subpoena would have been subject to a motion to quash because Troiano may not issue a subpoena for the sole purpose of gathering impeachment material.  <u>United States v. Fields</u>, 663 F.2d 880, 881 (9th Cir. 1981); <u>see</u> <u>also</u> <u>United States v. Nixon</u>, 418 U.S. 683, 701 (1974) (holding that "the need for evidence to impeach witnesses is insufficient to require its production in advance of trial").

     If Troiano had sprung the audio-taped conversations on a government witness during trial, the United States would have requested the tapes pursuant to Rule 613 of the Federal Rules of Evidence and a trial recess would have been necessary to allow the United States time to review the tapes.  Finally, as noted above, since Troiano has moved to exclude testimony of a government witness on the basis of the contents of the tapes, the United States would have obtained the tapes in order to respond to the Motion.  Accordingly, Troiano has failed to articulate a constitutional violation.

**3.   Troiano refused to comply with FDC
       procedures for opening "legal mail"**

     Troiano also makes an accusation that FDC officials have "routinely opened Troiano's legal communications prior to his receipt."  Motion, at 4.  Indeed, it is the policy of FDC to open all mail received by inmates <u>unless</u> the words "legal mail,

12

open only in presence of inmate" or "attorney/client privileged"
are written on the envelope.  As set forth in Exhibit G, the
affidavit of Amy Standefer, an attorney at FDC, Troiano was
advised by Ms. Standefer that FDC policy requires a particular
designation of legal mail to avoid rampant abuse of the legal
mail channel.  Troiano argued with Ms. Standefer over the policy
and refused to advise his attorney of the policy.  When she asked
that he put his complaints in writing, Troiano refused to do so.

Troiano has failed to present any evidence that he
and/or his attorney have complied with FDC policy and that FDC
officials abused FDC policy.  Troiano has not provided any letter
or document, which was properly identified as legal mail, that he
believes FDC officials opened outside of his presence.
Accordingly, he has not met his burden of demonstrating that he
has suffered a cognizable violation.

### C.    THE SUPERSEDING INDICTMENT IS LEGALLY SUFFICIENT

Troiano also seeks to dismiss the Superseding
Indictment on the basis of an "irregularity relating to the
serial number of a Colt /45 pistol" in Counts 3 and 4.  This
"irregularity" is a handwritten correction to the serial number
of the firearm that Troiano stole from the home of Commander
Curtis and Lorie Phillips on May 5, 2005, and the firearm he
subsequently used to hit the owner of The Brown Bottle on May 9,
2005.  Troiano left the firearm in a hotel room of the Ohana

13

Waikiki Surf, where it was later recovered by law enforcement. Troiano's motion to dismiss on this basis is also without merit.

It is well-settled in the Ninth Circuit that "[t]he essential purpose of an indictment is to give the defendant notice of the charge so that he can defend or plead his case adequately." United States v. Neill, 166 F.3d 943, 947 (9th Cir. 1999) (quoting United States v. James, 980 F.2d 1314, 1316 (9th Cir. 1992). "Generally, the failure of an indictment to detail each element of the charged offense constitutes a fatal defect." James, 980 F.2d at 1316. However, a minor or technical deficiency in the indictment will not cause reversal of a conviction absent prejudice to the defendant. Neill, 166 F. 3d at 948. Amendment of the indictment to fix typographical errors is appropriate as long as the error did not mislead the defendant. Id. (citing United States v. Lim, 984 F.2d 331, 337 (9th Cir. 1993)). Only where a defendant is misled to his prejudice about the charges against him will an indictment be found inadequate. United States v. Severino, 316 F.3d 939, 943 (9th Cir. 2003).

As set forth in the attached Declaration of Counsel, during the presentment of the Superseding Indictment to the Grand Jury, both the Grand Jury and the United States discovered a typographical error in the serial number of the firearm. Counsel corrected the serial number in front of the members of the Grand Jury and initialed it accordingly. See Declaration of Counsel.

14

The Superseding Indictment makes clear the crimes with which Troiano is charged such that Troiano was able to enter a plea and to prepare a defense.  Notably, Troiano has not argued that the corrected Superseding Indictment prevented him from understanding the charges against him.[8]  Without a showing of prejudice, the corrected error does not constitute a ground for dismissal.  <u>United States v. Romero</u>, 640 F.2d 1014, 1015 (9th Cir. 1981).  Troiano knows that he is charged with robbery, conspiracy to commit robbery, use of a firearm in commission of a felony, and prohibited possession of a firearm in light of his status as a convicted felon.  Troiano has suffered no prejudice from the correction to the Superseding Indictment, which occurred in the presence of the Grand Jury.[9]

Even if the Grand Jury, the prosecution, and/or the defense had failed to notice the typographical error until the Superseding Indictment went back to the trial jury, the Ninth Circuit precedent clearly would have allowed an amendment to the

---

[8]It should be noted that the discovery provided to Troiano identifies the serial number as CLW023025, which is the corrected serial number on the Superseding Indictment.  Thus, the Superseding Indictment, as corrected, is consistent with the discovery Troiano has received concerning the firearm he used to commit the crimes charged in this case.

[9]The Ninth Circuit has allowed an indictment to be amended even when the amendment related to an element of the offense charged.  <u>Neill</u>, 166 F. 3d at 948 (citing <u>James</u>, 980 F.2d at 1318 (holding that the indictment was sufficient even though it did not allege that both the defendant and the victim were Indians); <u>United States v. Coleman</u>, 656 F.2d 509, 511 (9th Cir. 1981).

Superseding Indictment at the time the error was discovered.
<u>Neill</u>, 166 F.3d 947-948.  Moreover, the present form of the
Superseding Indictment does not necessarily go back to the jury
that ultimately deliberates on Troiano's guilt.  If it is
determined that the charging document should go back to the jury,
it will be redacted and edited according to the evidence admitted
at trial.  During the course of this trial, the United States
will present evidence that (1) the firearm Troiano stole from
Commander Phillips' home bore the serial number CLW023025; (2)
Trioano used a firearm with the serial number CLW023025 in The
Brown Bottle robbery; and (3) a firearm with the serial number
CLW023025 was recovered from the hotel room occupied by Troiano
after the robbery.  Accordingly, if the charging document goes to
the jury at the time of deliberation, it will be edited to
reflect the serial number of the firearm introduced in evidence.

        Troiano's claim that "serious questions pertaining to
the grand jury process and Troiano's due process rights" exist is
without merit and his Motion should be denied.

III. <u>CONCLUSION</u>

       For the reasons set forth above, the Court should deny all three of the defendant's motions to dismiss.

       DATED: March 9, 2006, at Honolulu, Hawaii.

Respectfully submitted,

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By <u> /s/ Clare E. Connors     </u>
  WES R. PORTER
  CLARE E. CONNORS
  Assistant U.S. Attorneys

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . i

I.   BACKGROUND . . . . . . . . . . . . . . . . . . . 1

     A.   FACTS RELATED TO THE
          ROBBERY OF THE BROWN BOTTLE . . . . . . . . . . . 1

     B.   PROCEDURAL BACKGROUND . . . . . . . . . . 3

II.  DISCUSSION . . . . . . . . . . . . . . . . . . . 3

     A.   CATHERINE SYMONDS TESTIMONY
          IS ADMISSIBLE  . . . . . . . . . . . . . . . . . 3

     B.   PHONE CALLS MADE BY TROIANO FROM THE
          FEDERAL DETENTION CENTER ARE PROPERLY
          WITHIN THE POSSESSION OF THE UNITED STATES . . . . . 7

          1.   FDC acted in accordance with
               the provisions of the Ex Parte
               Application, Declaration, and Order  . . . . . . 7

          2.   Troiano has suffered no prejudice
               by disclosure of the audiotapes
               to the prosecutors  . . . . . . . . . . . . . 10

          3.   Troiano refused to comply with FDC
               procedures for opening "legal mail"  . . . . . 12

     C.   THE SUPERSEDING INDICTMENT
          IS LEGALLY SUFFICIENT  . . . . . . . . . . . . . 13

III. CONCLUSION . . . . . . . . . . . . . . . . . 17

TABLE OF AUTHORITIES

CASES                                                    PAGE(S)

United States v. Boyd,
       833 F.Supp. 1277 (N.D.Ill. 1993) . . . . . . . . . . . . . 8

United States v. Coleman,
       656 F.2d 509 (9th Cir. 1981) . . . . . . . . . . . . . 15

United States v. Fernandez,
       839 F.2d 639 (9th Cir. 1988) . . . . . . . . . . . . . 12

United States v. Fields,
       663 F.2d 880 (9th Cir. 1981) . . . . . . . . . . . . . 12

United States v. James,
       980 F.2d 1314 (9th Cir. 1992) . . . . . . . . . . . 14, 15

United States v. Lim,
       984 F.2d 331 (9th Cir. 1993) . . . . . . . . . . . . . 14

United States v. Neill,
       166 F.3d 943 (9th Cir. 1999) . . . . . . . . . . . 14, 15

United States v. Nixon,
       418 U.S. 683 (1974) . . . . . . . . . . . . . . . . 12

United States v. Ortega,
       203 F.3d 675 (9th Cir. 2000) . . . . . . . . . . . . . 11

United States v. Romero,
       640 F.2d 1014 (9th Cir. 1981) . . . . . . . . . . . . . 15

United States v. Santiago,
       46 F.3d 885 (9th Cir. 1995) . . . . . . . . . . . . . . 8

United States v. Severino,
       316 F.3d 939 (9th Cir. 2003). . . . . . . . . . . . . . 14

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and exact copy of the foregoing document was served on March 9, 2006, to the following person(s):

        Todd W. Eddins, Esq.
        1001 Bishop Street
        Pauahi Tower, Suite 1320
        Honolulu, Hawaii  96813

        Attorney for Defendant
        JAMES TROIANO

              **BY:  MAIL ( X )    HAND (  )**

        Pamela E. Tamashiro
        Ocean View Center
        707 Richards Street, PH 7
        Honolulu, Hawaii  96813

        Attorney for Defendant
        WENDELL R. TOKI

              **By:  MAIL ( X )    HAND (  )**

DATED:  March 9, 2006, at Honolulu, Hawaii.

                      <u>   /s/ Iris Tanaka   </u>