EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

RONALD G. JOHNSON   #4532
Chief, Major Crimes

WES R. PORTER     #7698
CLARE E. CONNORS   #7936
Assistant U.S. Attorneys
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, HI 96850
telephone:    541-2850
facsimile:    541-2958
e-mail:       wes.porter@usdoj.gov
              clare.connors@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 05-00261 HG |
| | ) | |
| Plaintiff, | ) | |
| | ) | UNITED STATES' TRIAL |
| vs. | ) | MEMORANDUM; EXHIBIT "A"; |
| | ) | CERTIFICATE OF SERVICE |
| JAMES TROIANO,        (01) | ) | |
| aka: "JOHN KLATT," | ) | |
| WENDELL K. TOKI,      (02) | ) | Trial:    April 4, 2006 |
| | ) | Hon. Helen Gillmor |
| Defendants. | ) | |
| | ) | |
| | ) | |

UNITED STATES' TRIAL MEMORANDUM

<u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . i-iii

I.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . 2

     A.   PREPARATION FOR THE ROBBERY
          OF THE BROWN BOTTLE . . . . . . . . . . . . . . 2

     B.   ROBBERY OF THE BROWN BOTTLE . . . . . . . . . . 6

     C.   PROCEDURAL BACKGROUND . . . . . . . . . . . . . 7

II.  EVIDENCE . . . . . . . . . . . . . . . . . . . . . . 7

     A.   TESTIMONY . . . . . . . . . . . . . . . . . . . 7

     B.   PHYSICAL EVIDENCE . . . . . . . . . . . . . . . 9

III. PERTINENT LAW . . . . . . . . . . . . . . . . . . . 9

     A.   Elements of 18 U.S.C. § 1951 . . . . . . . . . . 9

          1.   Defendants obtained property from Agader . . . 10

          2.   Defendants knowingly & deliberately
               obtained property by robbery . . . . . . . . 10

          3.   The robbery obstructed or affected
               interstate commerce . . . . . . . . . . . . 10

          4.   Elements of Conspiracy . . . . . . . . . . . 12

               i.   An Agreement Between Parties . . . . . . 12

               ii.  Commission of a Hobbs Act Robbery . . . . 13

               iii. Overt Act . . . . . . . . . . . . . . . 13

          5.   Elements of Aiding & Abetting . . . . . . . . 14

     B.   Elements of 18 U.S.C. § 924(c) . . . . . . . . . 16

     C.   Elements of 18 U.S.C. § 922(g) . . . . . . . . . 17

IV.  EVIDENTIARY ISSUES . . . . . . . . . . . . . . . . . . 18

     A.   RELEVANCE OF PRIOR BURGLARIES . . . . . . . . . . 18

     B.   BUSINESS RECORDS . . . . . . . . . . . . . . . 21

     C.   CERTIFIED RECORDS . . . . . . . . . . . . . . . 22

     D.   CHARTS . . . . . . . . . . . . . . . . . . . . 22

V.  POTENTIAL DEFENSES . . . . . . . . . . . . . . . . . 23

     A.   JURY NULLIFICATION . . . . . . . . . . . . . . 23

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . 24

TABLE OF AUTHORITIES

CASES                                                    PAGE(S)

American Tobacco Co. v. United States,
        328 U.S. 781 (1946) . . . . . . . . . . . . . . .  12

Carbo v. United States,
        314 F.2d 718 (9th Cir. 1963),
        cert. denied, 377 U.S. 953 (1964) . . . . . . . . .  13

Foster v. United States,
        308 F.2d 751 (8th Cir. 1962) . . . . . . . . . . .  23

Gustafson v. United States,
        469 U.S. 1189 (1985) . . . . . . . . . . . . . . .  22

Harris v. United States,
        536 U.S. 545 (2002) . . . . . . . . . . . . . . .  17

La Porta v. United States,
        300 F.2d 878 (9th Cir. 1962) . . . . . . . . . . .  21

United States v. Atcheson,
        94 F.3d 1237 (9th Cir. 1996) . . . . . . . . . . .  11

United States v. Bassey,
        613 F.2d 198 (9th Cir. 1979),
        cert. denied, 446 U.S. 919 (1980) . . . . . . . . .  21

United States v. Boone,
        951 F.2d 1526 (9th Cir. 1991) . . . . . . . . . . .  12

United States v. Buckner,
        610 F.2d 570 (9th Cir. 1979),
        cert. denied, 445 U.S. 961 (1980) . . . . . . . . .  13

United States v. Castro,
        887 F.2d 988 (9th Cir. 1989) . . . . . . . . . . .  13

United States v. Churchill,
        483 F.2d 268 (1st Cir. 1973) . . . . . . . . . . .  23

United States v. De Peri,
        778 F.2d 963 (3rd Cir. 1985) . . . . . . . . . . .  23

i

United States v. DeGeorge,
     380 F.3d. 1203 (9th Cir 2004) . . . . . . . . . . . . .   18

United States v. DeVincent,
     632 F.2d 147 (1st Cir. 1980),
     cert. denied, 449 U.S. 986 (1980) . . . . . . . . . .   22

United States v. Dinitz,
     424 U.S. 600 (1976) . . . . . . . . . . . . . . . . . .   22

United States v. Johnson,
     594 F.2d 1253 (9th Cir. 1979) . . . . . . . . . . . .   22

United States v. Kiriki,
     756 F.2d 1449 (9th Cir. 1985) . . . . . . . . . . . .   13

United States v. Monroe,
     552 F.2d 860 (9th Cir. 1977),
     cert. denied, 431 U.S. 972 (1977) . . . . . . . . . .   12

United States v. Pearce,
     912 F.2d 159 (6th Cir. 1990),
     cert. denied, 498 U.S. 1093 (1991) . . . . . . . . . .   12

United States v. Penagos,
     823 F.2d 346 (9th Cir. 1987) . . . . . . . . . . . . .   12

United States v. Powell,
     955 F.2d 1206 (9th Cir. 1991) . . . . . . . . . . . .   24

United States v. Rodriguez,
     360 F.3d 949 (9th Cir.),
     cert. denied, 543 U.S. 867 (2004) . . . . . . . . . .   11

United States v. Rrapi,
     175 F.3d 742 (9th Cir. 1999) . . . . . . . . . . . . .   20

United States v. Rubino,
     431 F.2d 284 (6th Cir. 1970),
     cert. denied, 401 U.S. 910 (1971) . . . . . . . . . .   23

United States v. Soulard,
     730 F.2d 1292 (9th Cir. 1984) . . . . . . . . . . . .   22

United States v. Thomas,
     887 F.2d 1341 (9th Cir. 1989) . . . . . . . . . . . .   13

United States v. Trujillo,
    714 F.2d 102 (11th Cir. 1983) . . . . . . . . . . . . . 23

United States v. Vizcarra-Martinez,
    66 F.3d 1006 (9th Cir. 1995) . . . . . . . . . . . . . 19

United States v. Zielie,
    734 F.2d 1447 (11th Cir. 1984) . . . . . . . . . . . . 22

RULES AND STATUTES

18 U.S.C. § 922(g)(1) . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 1951 . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. § 922(g) . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 922(g)(1) . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 924(c) . . . . . . . . . . . . . . . . . . . . 16

18 U.S.C. § 924(c)(1) . . . . . . . . . . . . . . . . . . 16

18 U.S.C. § 924(e) . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Evid. 803(22) . . . . . . . . . . . . . . . . . . . 9

Fed. R. Evid. 1005 . . . . . . . . . . . . . . . . . . . . 22

Fed. R. Evid. 803(8) . . . . . . . . . . . . . . . . . . . 22

Fed. R. Evid. 803(b)(6) . . . . . . . . . . . . . . . . . 21

Fed. R. Evid. 902(1) . . . . . . . . . . . . . . . . . . 9, 22

Fed. R. Evid. 902(11) . . . . . . . . . . . . . . . . 21, 22

Fed. R. Evid. 902(4) . . . . . . . . . . . . . . . . . . 9, 22

iii

The United States of America hereby respectfully submits this memorandum of issues and law to aid this Honorable Court in the trial of this matter.

I.   **FACTUAL BACKGROUND**

A.   **PREPARATION FOR THE ROBBERY OF THE BROWN BOTTLE**

On March 24, 2005, the defendant James Troiano, aka "John Klatt" (hereinafter "Troiano") obtained parole from a ten-year state sentence for his conviction on two-counts of Burglary in the First Degree.  Approximately two weeks later, on April 10, 2005, Troiano violated his parole by failing to appear at Victory Ohana.  Three days later, it appears Troiano committed the first of six known burglaries related to and preceding the robbery of The Brown Bottle in Waialua.  Troiano, who has four previous felony convictions in the State of Hawaii, had returned to his preferred haunting grounds, the Hawaii Kai/Kahala area.[1]

Specifically, on the morning of April 13, 2005, the home of Daniel Klein, who resides at 1030 Pueo Street, Kahala, Hawaii, was burglarized.  While Klein was sleeping, the perpetrator stole, among other things, Klein's black Toyota Camry, which Klein will testify had a license plate number JWA 457.  The black Toyota Camry is the vehicle Troiano and his accomplice, Tony Esparza ("Esparza"), used as the get-away

---

[1]The crime scenes for Troiano's prior burglary convictions are, respectively, Hawaii Kai, Aikahi, Kahala, and Portlock.

2

vehicle following the robbery of The Brown Bottle.  This is the vehicle witnesses saw Troiano, not Esparza, driving shortly before the robbery of The Brown Bottle.  One witness in particular observed Troiano driving the vehicle in Ewa Beach on multiple occasions prior to the robbery.  Witnesses place the vehicle at the scene of the robbery; one witness identified the license plate number as JWJ 457, which differs by only one digit from, JWA 457, the actual license plate of the car Klein will testify was stolen from his home.  On May 10, 2005, the day after the robbery of The Brown Bottle, officers of the Honolulu Police Department ("HPD") arrested Troiano in Ewa Beach and retrieved Klein's vehicle from the site of the arrest.

On April 13, 2005, the home of John Klatt and David Envino, who reside less than a half mile from Klein's residence, was also burglarized.  Among other items, the perpetrator took identification documents belonging to John Klatt, including Klatt's passport and an out-dated Hawaii State driver's license. Not only did HPD obtain a fingerprint belonging to Troiano from the crime scene, Troiano used Klatt's driver's licence to pawn items taken from subsequent burglaries; the fingerprints on the pawn tickets traced back to Troiano.  Troiano also used the driver's license to rent a room at the Ohana Waikiki Surf hotel following the robbery at The Brown Bottle.

The criminal activity did not cease with the burglaries of Klein and Klatt's homes.  Instead, on the same day, April 13, 2005, the home of Michael Higuchi and Ted Tennis, who reside two and a half miles from John Klatt, was burglarized.  Among the many items stolen from Higuchi was a black Lowel Pro backpack, which Troiano then attempted to pawn at Bag's End Pawn, located at 1676 Kalakaua Avenue.  To pawn the items stolen from these burglaries, Troiano used John Klatt's identity, specifically, the out-dated Hawaii State driver's license.  On April 13, 2005, Troiano signed his name on the pawn ticket as "John Klatt," but the fingerprint came back through a forensic test as a match to Troiano.  HPD retrieved the black backpack, which Higuchi identified as the one stolen from his home on April 13, 2005.

The spate of burglaries continued with the burglary of the Hawaii Kai home of W. Michael Cordeiro on April 15, 2005.  Among other items, the perpetrator stole a set of Prince tennis rackets in a Prince tennis bag with a name tag that read, "W.M. Cordeiro."  On the same day, April 15, 2005, Troiano attempted to pawn these items using the identity of John Klatt.  As in the other cases, although he signed his name "John Klatt," the fingerprint on the pawn ticket came back to Troiano.  Three days later, on April 18, 2005, the home of Preston and Norine Iha in Waialae was burglarized.  On the same day, Troiano attempted to pawn items stolen from the Iha's residence.  He again signed the

4

name of "John Klatt" on the pawn ticket, although the fingerprint came back to Troiano.

On May 5, 2005, the Hawaii Kai home of Commander Curtis and Lorie Phillips was burglarized. Among other items, the perpetrator stole a Colt .45 handgun and various pieces of jewelry, coins, and medallions. Following the burglary, Troiano attempted to pawn items belonging to Lorie Phillips. As with the other burglaries, he signed the pawn ticket in the name of "John Klatt" but the fingerprint came back to Troiano. In addition, Troiano mailed to his daughter, Lancia Troiano, an item that belonged to Lorie Phillips.

Some of the items stolen from the Phillips residence, most notably the Colt .45 firearm, were recovered at the Ohana Waikiki Surf Hotel on May 12, 2005, three days after the robbery of The Brown Bottle. Troiano had used John Klatt's license to register at the Ohana Waikiki Surf Hotel. His prior use of John Klatt's identification to pawn the Phillips' belongings links him, and not some unidentified third party, to the hotel room and indicates that he, not Esparza or some other individual, had control of the items found in that room, including the gun used in The Brown Bottle robbery. In anticipation of Troiano's defense that his accomplice, Esparza, was the one who perpetrated the robbery, the evidence linking Troiano to the prior pawned items confirms that Troiano, not Esparza, was the one who had

5

control of the gun, the car, and the other proceeds from the
robbery found in the hotel.


   B.   **ROBBERY OF THE BROWN BOTTLE**

        The crime spree appears to have ended on May 9, 2005,
with the robbery of The Brown Bottle.  The evidence at trial will
demonstrate that in the early morning hours of May 9, 2005,
Troiano attacked Milton Agader ("Agader"), the owner of The Brown
Bottle, a liquor store in Waialua, as he entered the store.
Troiano hit Agader in the face with a handgun and forced him
inside the store.  Troiano and Esparza then proceeded to take
with force approximately $2,000 from the safe located underneath
the cash register, and approximately $12,000 from the automated
teller machine ("ATM") located in the store.  During the course
of the robbery, Troiano and Esparza alternated holding Agader,
who was bleeding from his wound, at gunpoint.  The whole robbery
took just minutes, as Troiano had precise knowledge regarding the
location of the safe and the details concerning the ATM.

        After they left The Brown Bottle, Troiano and Esparza
checked into the Ohana Waikiki Surf Hotel.  Troiano used the
"John Klatt" license and Esparza used his Hawaii identification
card.  HPD arrested Troiano on May 10, 2005, on an Unlawful
Control of a Propelled Vehicle ("UCPV") charge, which prevented

him from returning to the hotel room.  Hotel security entered the room on May 12, 2005, and found in the safe, among other things, the Colt .45 pistol stolen from the Phillips residence and approximately $4,000 in U.S. currency.

On May 4, 2005, five days prior to the robbery, Troiano and co-defendant Wendell Toki ("Toki") discussed the layout of The Brown Bottle, including the location of the safe in the floor and the fact that Agader had the combination to the ATM.  Toki was familiar with The Brown Bottle because his mother, Helen Toki, worked there.  Toki also had worked there and knew Agader's routine because he often was physically present when Agader would handle the money.  Toki told Troiano that on Monday mornings, the safe contained more proceeds from the previous Sunday.  In addition, the United States will prove that Toki asked Troiano not to rob The Brown Bottle while his mother was performing her cleaning duties, which she usually did just prior to Agader's arrival.  Following the robbery, Troiano provided defendant Toki with $5,000, Toki's share of the money taken from The Brown Bottle.  HPD recovered $4,100 from Toki on May 18, 2005.

### C.    PROCEDURAL BACKGROUND

On June 22, 2005, a Grand Jury sitting in Honolulu, Hawaii, returned an Indictment against Troiano and Toki.  On October 5, 2005, the same Grand Jury returned a Superseding Indictment against Troiano and Toki.

## II.  EVIDENCE

### A.  TESTIMONY

The United States will call four categories of witnesses at trial to prove the alleged crimes.  One category includes the victim and eyewitnesses who will testify about the robbery itself.  Witnesses will testify about conversations they had with the defendants or observations they made prior to and following the robbery.  Another category includes the victims of the burglaries who will testify to the fact they were burglarized, what was stolen, and what was recovered.  They will testify that they did not authorize any of their goods to be pawned by Troiano or John Klatt, and, in the case of John Klatt, that he did not attempt to pawn any items nor did he sign any pawn tickets.  The third category includes businesses associated with The Brown Bottle whose representatives will testify about the interstate business conducted by The Brown Bottle.

The final category includes HPD experts who performed the fingerprint analyses.  They will testify that a fingerprint lifted from John Klatt's residence, as well as the fingerprints on the pawn tickets, match a known print belonging to Troiano in the HPD database.  An HPD gun expert will testify that she test-fired the Colt .45 firearm.  In addition, an expert from the Bureau of Alcohol Tobacco & Firearms ("ATF") will testify that the firearm traveled in interstate commerce.  Detective Brian

Johnson, the case agent, will also testify about the investigation, including the results of search warrants he executed on Troiano's Chevy Blazer, Troiano's wallet, and the items recovered at the Ohana Waikiki Surf hotel.

###    B.    PHYSICAL EVIDENCE

The United States intends to offer telephone records from the T-mobile account of Esparza and the Cellco account of Toki, which tracks communications between the defendants. In addition, the United States will admit certified documents that are self-authenticating under 902(1). If a stipulation as to Troiano's prior felony conviction is not reached, certified copies of his four prior felony convictions will be submitted under FRE 803(22) and 902(1), (4).

## III. PERTINENT LAW

###    A.    Elements of 18 U.S.C. § 1951

Count 1 charges both defendants with conspiring to commit a Hobbs Act robbery, in that the forceful taking of property from Agader, the owner of Agader-Silva, did obstruct and affect commerce as that term is defined in Title 18, United States Code, Section 1951. Count 2 charges the defendants with the actual Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951. The version of § 1951 in effect during the period of their conduct provides in pertinent part:

9

> It shall be unlawful for any person ... to obstruct, delay, or affect commerce or the movement of any article or commodity in commerce, by robbery...or attempt or conspire so to do...

The elements of the offense are: (1) defendants obtained property from Agader, owner of Agader-Silva; (2) they did so knowingly and deliberately by robbery; and (3) the robbery obstructed or affected interstate commerce.

### 1. **Defendants obtained property from Agader**

As mentioned above, the United States will present the testimony of both the victim, Agader, and others who either participated in or observed the defendants commit their criminal acts. Video surveillance photographs of Troiano and Esparza committing the crime will also be submitted. Toki's own statement confirms that he divulged crucial information about The Brown Bottle and that he received $5,000 from the robbery.

### 2. **Defendants knowingly & deliberately obtained property by robbery**

The testimony of Agader and Esparza, as well as photographs of Troiano and Esparza committing the actual robbery, will be introduced to prove this element. As noted above, the United States will introduce Toki's admission that he was approached and freely divulged information regarding The Brown Bottle. The United States will also introduce evidence that Toki told Troiano not to commit the robbery when his mom was there and that Troiano provided Toki with $5,000 of the robbery proceeds.

10

### 3.    **The robbery obstructed or affected interstate commerce**

Based on Troiano's two motions to dismiss the indictment, the United States anticipates that Troiano will raise the issue of jurisdiction at trial.  The interstate nexus requirement is a "de minimus" requirement.  United States v. Rodriguez, 360 F.3d 949, 955 (9th Cir.), cert. denied, 543 U.S. 867 (2004).  The United States need not prove that the defendant's actions actually affected interstate commerce but only that the defendant's actions had a probable or potential impact on interstate commerce.  United States v. Atcheson, 94 F.3d 1237, 1243 (9th Cir. 1996).  Moreover, the United States does not need to prove that Troiano or Toki had a specific intent to affect commerce, just that the natural consequences of the robbery would be to delay, interrupt or adversely affect interstate commerce.  Rodriguez, 360 F.3d at 957 (holding that "it is not necessary for Rodriguez to have been subjectively aware that his actions affect interstate commerce").

Through Agader's testimony, the United States intends to demonstrate the manner in which The Brown Bottle transacts business with companies that are not located in the State of Hawaii.  Specifically, Agader will testify that The Brown Bottle purchases liquor and other goods that are imported from other states and countries.  In addition to his testimony, the United States will introduce invoices and other testimonial evidence

11

from local liquor and goods distributors from which Agader
purchases goods for The Brown Bottle.  The United States will
elicit additional testimony concerning the national and
international ATM networking system to which The Brown Bottle ATM
is linked and which was depleted by Troiano and Esparza.

The money taken in the robbery could and likely would
have been used to purchase goods manufactured out-of-state.
Thus, depleting The Brown Bottle's cash reserves had at least a
potential affect on the ability of The Brown Bottle to engage in
interstate commerce.

### 4.   Elements of Conspiracy

To prove a conspiracy, as alleged in Count 1, the
United States must prove: (1) an agreement between a minimum of
two persons; (2) to commit a Hobbs Act robbery; and (3) an overt
act by a conspirator in furtherance of the conspiracy.

### i.   An Agreement Between Parties

An agreement is the focal point of a conspiracy.  It
may be an informal, even tacit, understanding between the
conspirators.  American Tobacco Co. v. United States, 328 U.S.
781, 809-810 (1946); United States v. Pearce, 912 F.2d 159, 161
(6th Cir. 1990), cert. denied, 498 U.S. 1093 (1991); United
States v. Boone, 951 F.2d 1526, 1543 (9th Cir. 1991).  Proof of
the agreement may be inferred from the circumstances of the case
and the conduct of the parties.  United States v. Monroe, 552

12

F.2d 860, 862 (9th Cir. 1977), cert. denied, 431 U.S. 972 (1977);
United States v. Penagos, 823 F.2d 346, 348 (9th Cir. 1987).  The
proof need not demonstrate an explicit or formal agreement.
United States v. Castro, 887 F.2d 988, 994 (9th Cir. 1989);
United States v. Thomas, 887 F.2d 1341, 1347 (9th Cir. 1989).
The United States can establish the existence of an agreement if
it can show that there was a "concert of action" where the
parties were knowingly working together with a single design for
the accomplishment of a common purpose.  Castro, 887 F.2d at 994.
This may be inferred from "active and joint participation" in the
overt acts.  Carbo v. United States, 314 F.2d 718, 733 (9th Cir.
1963), cert. denied, 377 U.S. 953 (1964).

### ii.  Commission of a Hobbs Act Robbery

This element will be proven by virtue of proving the
elements of the substantive charge in Count 2, discussed above.

### iii. Overt Act

The United States must prove not only the
conspiratorial agreement, but also an overt act committed in
furtherance of the conspiracy.  United States v. Kiriki, 756 F.2d
1449, 1453 (9th Cir. 1985).  The overt act demonstrates that the
conspiracy is at work and not simply an agreement sitting in the
minds of the conspirators.  The overt act need not be a crime in
and of itself, as long as it is in furtherance of the conspiracy.

13

United States v. Buckner, 610 F.2d 570, 573 (9th Cir. 1979),
cert. denied, 445 U.S. 961 (1980).

In this case, the overt acts as to Troiano include the
actions he took leading up to the robbery and the robbery itself.
As to Toki, the United States will prove that prior to and in
preparation of the robbery, Toki showed Troiano around The Brown
Bottle, described the layout of the safe and the ATM, and also
provided Troiano with the crucial information, including the time
Agader arrives at The Brown Bottle, and the fact that he has the
combination to the safe and the security code to open the ATM.

As set forth in the United States' Opposition to
Troiano's Motion for Severance of Defendants, the United States
will elicit the prior, voluntary statement given by Toki to law
enforcement through the testimony of the case agent, Detective
Johnson.  The United States will ensure that any reference to
Troiano's existence is omitted during Detective Johnson's
testimony and will ask the Court to instruct the jury, both at
the time the statement is elicited and prior to the jury's
deliberation, that Toki's statement is to be considered only as
to Toki's guilt and not as to Troiano.  The United States also
will object to any attempt by Toki's counsel to cross-examine
Detective Johnson beyond the scope of his direct testimony.

**5.    Elements of Aiding & Abetting**

Title 18 U.S.C. § 2 provides in pertinent part:

14

It shall be unlawful to aid, abet, counsel, command, induce or procure the commission of an offense against the United States.

The United States must prove: (1) a Hobbs Act violation was committed; (2) the defendant knowingly and intentionally aided, counseled, commanded, induced, or procured persons in committing that crime; and (3) the defendant acted before the crime was completed.

As set forth in the Ninth Circuit Model Jury Instructions, a defendant may be found guilty of robbery of a commercial establishment even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission. See Ninth Circuit Instruction 5.1. It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime. Id.

In this case, the evidence the United States intends to introduce against Toki will prove beyond a reasonable doubt that he divulged the critical information about The Brown Bottle to Troiano with the knowledge and intention of helping Troiano commit the robbery of a commercial establishment. Toki's willful participation is confirmed not only by his own admissions but by evidence that he knew Troiano intended to rob The Brown Bottle. The fact that Toki obtained $5,000 from the robbery and spent

15

approximately $900 within the ensuing week, demonstrates that he intended to benefit from the robbery.

Because Toki, at a minimum, aided and abetted Troiano by willfully divulging details about where Agader kept The Brown Bottle's cash, he is responsible for Troiano's conduct just as if Toki himself had entered The Brown Bottle on May 9, 2005, and committed the armed robbery.

### B.    Elements of 18 U.S.C. § 924(c)

Count 3 charges Troiano with carrying and brandishing a firearm during the commission of a crime of violence, that is, the conspiracy to commit and the commission of the Hobbs Act robbery. The version of Title 18, U.S.C. § 924(c)(1) in effect at the time of the crime provides in pertinent part:

> It shall be unlawful for...any person who, during and in relation to any crime of violence...(including a crime of violence ...that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon...) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm.

The elements of the crime are: (1) Troiano committed the crime of robbery; (2) Troiano knowingly carried the Colt .45; and (3) Troiano carried the Colt .45 during and in relation to the robbery.

A defendant can be found to carry a firearm if he knowingly possesses or carries the firearm. Moreover, a defendant takes such action "in relation to the crime" if the

firearm facilitated or played a role in the crime.  In this case, the video surveillance pictures show Troiano holding the firearm. Esparza will testify that Troiano hit Agader with the gun, and Agader will testify that the taller of the two perpetrators (Troiano) was the one who hit him with the firearm and who otherwise used it to force Agader to give up the cash.

        With respect to the "brandishing" of the firearm charged in the Superseding Indictment, the United States will move to strike the term because it constitutes a sentencing issue and therefore surplusage.  See Harris v. United States, 536 U.S. 545 (2002) (establishing that "brandishing" a firearm was a sentencing factor rather than an element of a crime).  Similarly, the statutory sentencing enhancement under 18 U.S.C. § 924(e) constitutes a sentencing issue that the United States will not need to prove at trial.

        C.    **Elements of 18 U.S.C. § 922(g)**

        Count 4 charges Troiano with being a felon in possession of a firearm.  The version of Title 18, U.S.C. § 922(g)(1), in effect at the time of the crime provides in part:

> It shall be unlawful for any person...who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding a year to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The elements are: (1) Troiano was convicted of a crime punishable by imprisonment for a term exceeding one year; (2) that after such conviction, he knowingly possessed a firearm; and (3) the possession of the firearm was in or affecting commerce.

As discussed above, if Troiano stipulates to the fact of his prior felony conviction, the United States will not seek to admit, pursuant to 902(4), his penitentiary packet. The United States will prove his possession of the Colt .45 pistol as part of the evidence it presents for the Hobbs Act robbery. In addition to Curtis Phillips' testimony about how he obtained the firearm, the United States will present an expert from the ATF, who will testify that the Colt .45 pistol traveled in interstate commerce.

## IV.   **EVIDENTIARY ISSUES**

### A.   **RELEVANCE OF PRIOR BURGLARIES**

In its case-in-chief, the United States does not intend to introduce evidence of Troiano's prior convictions, including his three previous convictions for Burglary in the First Degree, <u>unless</u> a stipulation regarding his status as a felon is <u>not</u> reached. In the latter case, the United States will introduce Troiano's complete penitentiary packet. With respect to the six prior, uncharged burglaries, the United States will elicit only that evidence which is necessary to link Troiano to the robbery of The Brown Bottle.

18

The Ninth Circuit has recognized two categories of evidence that may be considered "inextricably intertwined" with a charged offense and therefore admitted without regard to Rule 404(b). United States v. DeGeorge, 380 F.3d. 1203, 1220 (9th Cir 2004). First, evidence of prior acts may be admitted if the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge." Id. Second, prior act evidence may be admitted "when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." Id. With regard to this second category, the Ninth Circuit has emphasized that "[t]he jury cannot be expected to make its decision in a void - without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." United States v. Vizcarra-Martinez, 66 F.3d 1006, 1013 (9th Cir. 1995).

In this case, the United States anticipates that Troiano will attempt to blame the substantive parts of the crime on his accomplice, Esparza. Troiano also might try to argue that a third, unidentified individual used the license of "John Klatt" to register at the Ohana Surf Hotel, which is where the gun used in the robbery and proceeds from the robbery were found. The fact that Troiano filed a Motion in Limine seeking to strike his alias from the caption of the Superseding Indictment indicates that he will not stipulate to his use of the "John Klatt"

19

identity and that the United States will need to prove it in its
entirety.

    With the exception of Curtis and Lorie Phillips, from
whose home the Colt .45 was stolen, the United States will ask
very limited questions from the other burglary victims.  The
United States will ask whether the witness' home was burglarized,
and if so, what particular items were stolen.  In the case of
Michael Higuchi, for example, the United States will only elicit
that a black Lowel pro backpack was stolen and that subsequently,
HPD retrieved it and Higuchi identified it.  The fact that this
backpack was pawned by a ticket containing Troiano's fingerprint
but "John Klatt's" signature is evidence of Troiano's use of
"John Klatt's" identification prior to May 9, 2005, when he used
the identification to check-in at the Ohana Surf Waikiki.
Testimony concerning the other burglaries will be elicited for
the same, limited purpose of demonstrating the manner in which
Troiano used John Klatt's identification prior to and following
the robbery of The Brown Bottle.

    In the case of the Phillips, the fact that an item
stolen from their home was listed on a pawn ticket linked to
Troiano is important because it confirms that Troiano, and not
Esparza or some third, unidentified person, was the one who
obtained control and custody of the items taken from the Phillips
home, including the Colt .45.  Thus, the evidence linking Troiano

20

to the use of the "John Klatt" identification is inextricably
intertwined with the United States' case and necessary to
establish that Troiano had custody and control of the firearm.
See United States v. Rrapi, 175 F.3d 742, 748 (9th Cir. 1999)
("[e]vidence of bad acts may be admitted for the purpose of
providing the context in which the charged crime occurred.").

### B.  BUSINESS RECORDS

As noted above, the United States expects to offer into
evidence records made and kept in the regular course of business
under Rule 803(b)(6) of the Federal Rules of Evidence ("FRE").
These records were obtained from two telephone companies.  When
seeking to introduce documents under the exception to the hearsay
rule in FRE 803(b)(6), the United States must produce the
custodian or other qualified witness to testify that the
documents were made and kept in the regular course of business.
This witness need not have actual knowledge of the treatment of
the specific documents in question and need not know who actually
made and kept the records.  United States v. Bassey, 613 F.2d
198, 201 n.1 (9th Cir. 1979), cert. denied, 446 U.S. 919 (1980).
It is not necessary to identify, locate, or call as a witness the
person who actually made or kept the records.  Id.  Challenges to
the accuracy or completeness of the business records do not
affect their admissibility.  Rather, they concern merely the

21

weight to be given to the evidence.  <u>La Porta v. United States</u>,
300 F.2d 878, 880 (9th Cir. 1962).

In this case, the United States will seek to introduce
the telephone records pursuant to FRE 803(6) and 902(11).  The
United States provided written notice of the United States'
intent to introduce these two sets of records on March 17, 2006.
The records and declarations have been made available to counsel
for review in compliance with FRE 902(11).

### C.    CERTIFIED RECORDS

The United States anticipates offering into evidence
certified copies of State records concerning Klein's car.  These
records are self-authenticating and admissible pursuant to FRE
902(1), (4), and 803(8) and 1005.

### D.    CHARTS

The United States intends to use a chart during its
opening statement and in closing argument.  <u>See</u> Exhibit "A."
This chart is intended to assist the jury in understanding how
the various events about which they will hear testimony connect
to the crimes and to defendants Troiano and Toki.

The use of charts is well-established in the Ninth
Circuit.  <u>United States v. Johnson</u>, 594 F.2d 1253 (9th Cir.
1979); <u>United States v. Soulard</u>, 730 F.2d 1292, 1300 (9th Cir.
1984).  The purpose of an opening statement is to acquaint the
jury with the substance and theory of the case and to outline the

forthcoming proof so that the jurors may more intelligently follow the testimony.  See, e.g., United States v. Zielie, 734 F.2d 1447, 1455 (11th Cir. 1984), cert. denied, Gustafson v. United States, 469 U.S. 1189 (1985) (relying on United States v. Dinitz, 424 U.S. 600, 612 (1976)); United States v. DeVincent, 632 F.2d 147, 153 (1st Cir. 1980), cert. denied, 449 U.S. 986 (1980); Foster v. United States 308 F.2d 751, 753 (8th Cir. 1962).  Charts are permitted during opening statement when they do no more than assist the jury in understanding the nature of the proof it is about to hear.  See United States v. De Peri, 778 F.2d 963, 978-79 (3rd Cir. 1985); United States v. Churchill, 483 F.2d 268, 274 (1st Cir. 1973); United States v. Rubino, 431 F.2d 284, 289-290 (6th Cir. 1970), cert. denied, 401 U.S. 910 (1971).

## V.    POTENTIAL DEFENSES

### A.    JURY NULLIFICATION

In addition to the potential defenses discussed in the previous sections, the tenor of Troiano's pretrial motions indicates that he might argue that this case should not be in federal court but rather should be prosecuted by the State of Hawaii.  Accordingly, he might attempt to present testimony, evidence, or argument regarding the jury's power of nullification, that is, to decide the case according to its own judgment and conscience, notwithstanding the law.  In United States v. Trujillo, 714 F.2d 102, 105 (11th Cir. 1983), the court

of appeals upheld the district court's refusal to allow
defendant's attorney to argue jury nullification in his closing
statement.  The court explained its holding as follows:
"[defendant's] jury nullification argument would have encouraged
the jurors to ignore the court's instruction and apply the law at
their own caprice."  <u>Id.</u> at 106; <u>see also</u> <u>United States v.</u>
<u>Powell</u>, 955 F.2d at 1206, 1213 (9th Cir. 1991) (noting that Ninth
Circuit "precedent indicates that the [defendants] are not
entitled to jury nullification instructions").

     The jurors will be instructed on the jurisdictional
nexus that they must find and Troiano should be prohibited from
suggesting in any way that the jurors should disregard this
instruction based on a belief that this case should not be in
federal court.

## VI.  <u>CONCLUSION</u>

     In addition to the issues discussed above, the United
States will address other issues, unforeseen at the time this
brief was filed, in the normal course.

     DATED: March 22, 2006, at Honolulu, Hawaii.

     Respectfully submitted,

     EDWARD H. KUBO, JR.
     United States Attorney
     District of Hawaii

     By  /s/ Clare E. Connors
       WES R. PORTER
       CLARE E. CONNORS
       Assistant U.S. Attorneys

24

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:


**<u>Served Electronically through CM/ECF</u>:**

Todd W. Eddins
<u>eddins@eddinsdefense.com</u>            March 22, 2006

Attorney for Defendant
JAMES TROIANO


**<u>Served by First Class Mail and Facsimile</u>:**

Pamela E. Tamashiro, Esq.        March 22, 2006
Ocean View Center
707 Richards St., PH 7
Honolulu, HI  96813
FAX: 536-0458

Attorney for Defendant
WENDELL R. TOKI


DATED:  March 22, 2006, at Honolulu, Hawaii.


     /s/ Iris Tanaka