IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>     vs.<br><br>JAMES TROIANO,     (01)<br>     aka:  "JOHN KLATT",<br><br>WENDELL K. TOKI,     (02)<br><br>           Defendants.<br>_____ | ) CRIM. NO. 05-00261 HG<br>)<br>) **ORDER ON VARIOUS PRETRIAL**<br>) **MOTIONS HEARD MARCH 17, 2006**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER ON VARIOUS PRETRIAL MOTIONS HEARD MARCH 17, 2006**

Defendant James Troiano ("Troiano") is charged with armed robbery.  Troiano filed several pretrial motions to dismiss the Superseding Indictment or to exclude certain evidence which the Court heard on March 17, 2006.

## BACKGROUND

The Superseding Indictment charges Defendant with:

(1)   Count 1 - conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. §§ 1951 and 2;

(2)   Count 2 - Hobbs Act robbery in violation 18 U.S.C. §§ 1951 and 2;

(3)   Count 3 - the use of a firearm during Hobbs Act robbery

1

in violation of 18 U.S.C. § 924(c); and

(4) Count 4 - being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and 924(e).

The Government contends that the evidence at trial will demonstrate the following:

In the early morning hours of May 9, 2005, Troiano attacked Milton Agader ("Agader"), the owner of The Brown Bottle, a liquor store in Waialua, Hawaii, as he entered the store. Troiano hit Agader in the face with a gun and forced him inside the store. Troiano and his co-conspirator, Tony Esparza, then took approximately $14,000 from the safe and the automated teller machine located in the store. During the robbery, Troiano and Esparza alternated holding Agader on the ground at gunpoint.

After they left The Brown Bottle, Troiano and Esparza checked into the Ohana Waikiki Surf Hotel. Troiano used a license in the name of "John Klatt." On May 10, 2005, the Honolulu Police Department arrested Troiano. Hotel security entered the hotel room and found, among other things, a Colt .45 pistol and approximately $4,000 in U.S. currency.

## PROCEDURAL HISTORY

On March 17, 2006, the Court heard the following motions filed by Troiano:

"Motion to Dismiss Indictment or, in the Alternative, to Suppress Prosecution Evidence Relating to Audiotaped Federal

Detention Center Phone Calls", filed February 27, 2006 (Doc. 83.)

"Motion to Dismiss Counts 3 and 4 of the Indictment", filed February 27, 2006 (Doc. 84.)

"Motion to Dismiss Indictment or to Exclude Testimony of Catherine Symonds", filed February 27, 2006 (Doc. 85.)

"Motion to Suppress Identification", filed February 23, 2006 (Doc. 77.)

On March 9, 2006, the Government filed a consolidated Memorandum in opposition to the motions filed on February 27, 2006 (Doc. 101, "Gov. Opp.") and a separate opposition to Troiano's motion to suppress identification (Doc. 100. "Gov. Opp. to Mot. to Suppress").

### STANDARD OF REVIEW

**A.   Motion to Dismiss an Indictment**

Under Federal Rule of Criminal Procedure 12(b)(2), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). In considering a pretrial motion to dismiss an indictment, the court "must presume the truth of the allegations in the charging instruments." United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996). "Although the court may make preliminary findings of fact necessary to decide the legal questions presented by the motion, the court may not invade the province of the ultimate finder of

fact." United States v. Nukida, 8 F.3d 665, 669 (9th Cir. 1993) (internal citations omitted).

**B.  Evidentiary Hearing**

Where a defendant's motion does not raise any "contested issues of fact" an evidentiary hearing is not required. See United States v. Ramirez-Garcia, 269 F.3d 945, 947 (9th Cir. 2001) (evidentiary hearings on motions to suppress are only required if the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist); United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000) (a district court's decision not to hold an evidentiary hearing on a motion to suppress is reviewed for abuse of discretion).

## ANALYSIS

**I.  Motion to Dismiss Indictment or, in the Alternative, to Suppress Prosecution Evidence Relating to Audiotaped Federal Detention Center Phone Calls by Defendant**

**A.  Background**

On August 30, 2005, Defendant Troiano filed an "Ex Parte Application for Issuance of Subpoena and Payment of Witness Fees", under seal, for issuance of a subpoena to the Custodian Of Records of the Federal Detention Center of Honolulu ("FDC"). Troiano sought the audiotapes of telephone conversations between Troiano, while he was in federal custody, and some of the
4

Government's potential witnesses that the FDC tape-recorded. The Court granted Troiano's ex parte application for the subpoena. The ex parte application and order remained under seal.

Troiano submits that the audiotapes were to be sealed both from the general public and from the Government. It is undisputed that the FDC provided a copy of the audiotapes to the Government.

Troiano's defense counsel has also submitted a Declaration of Counsel in support of the motion to dismiss in which Troiano's counsel states that he is under the belief that Troiano has received numerous documents and materials at the FDC from his attorneys that were opened, and presumably perused, outside of his presence.

Pursuant to Fed. R. Crim. P. 17(b), Troiano subpoenaed two individuals from the FDC to testify at the March 17, 2006 hearing regarding the FDC audiotapes and the alleged opening of Troiano's legal mail. The Government moved to quash the subpoenas and, on March 17, 2006, the Court granted the Government's motion to quash because Troiano failed to comply with the federal regulations applicable to requests for testimony from a United States Department of Justice employee. See 28 C.F.R. § 16.23.

   B. Analysis

      1. *Motion to Suppress FDC Audiotapes of Telephone Calls*

In its opposition to Troiano's motion, the Government represented that it does not intend to use the FDC audiotaped conversations at trial. At the March 17, 2006 hearing, Troiano conceded that the Government's decision not to use the FDC audiotapes moots his motion to suppress the audiotapes. Given the Government's intent not to use the audiotapes, the Court holds that Troiano's motion to suppress is **MOOT**.

Even if Troiano's motion to suppress were not moot, for the reasons discussed below, the Court finds that Troiano has failed to allege sufficient facts to warrant suppression of the audiotapes.

### 2. Motion to Dismiss Because of Government's Receipt of FDC Audiotapes of Telephone Calls

Troiano claims that the Government's receipt of the FDC audiotapes of telephone calls between him and various potential Government witnesses somehow violates his right to due process under the Fifth Amendment of the United States Constitution, including his right to a fair trial and the right to present a defense. Troiano also contends that the Government has infringed his Sixth Amendment constitutional right to compulsory process and the assistance of counsel.

Neither the ex parte application for the subpoena for the FDC audiotaped telephone records nor the order on the ex parte application prohibit the FDC from giving a copy of the FDC

6

audiotaped telephone records to the Government.  Further, as Troiano acknowledged at the March 17, 2006 hearing, had he decided to use the audiotapes at the trial, he would have had to provide the audiotapes to the prosecution in any event.  The Government has also submitted evidence that Troiano's former counsel knew that the Government had a copy of the FDC telephone records and that his former counsel was in communication with the Government regarding same.  (See Gov. Opp. at Exhibit D, Letter from Harlan Y. Kimura, Esq. to Wes R. Porter, Esq., dated Sept. 14, 2005.)

Troiano has failed to articulate how the Government's receipt of the audiotapes from the FDC has violated his constitutional rights.  In particular, he has not pointed to any portion of the audiotapes, the disclosure of which has in any way prejudiced him or otherwise caused him harm.  Without a threshold showing of contested issues of fact to support the legal grounds upon which he bases his motion, Troiano is not entitled to an evidentiary hearing.  The Court **DENIES** Troiano's motion to dismiss based on the disclosure of the FDC audiotapes to the Government.

### 3. Motion to Dismiss Because of FDC's Alleged Opening and Perusing of Troiano's Legal Mail

Troiano has similarly failed to set forth sufficient allegations to be entitled to an evidentiary hearing regarding

the FDC's alleged opening and perusal of his legal mail.  Troiano did not attach sufficient evidence to his motion to show that the FDC impermissibly opened his legal mail.

Even if the FDC had impermissibly opened Troiano's legal mail, Troiano has failed to articulate how he has been harmed.  There is no evidence regarding the contents of the legal mail.  Nor is there any evidence that the FDC transmitted Troiano's legal mail to the prosecution in this case.  In contrast, the Government has presented evidence that an FDC attorney advised Troiano of the FDC policy regarding legal mail, but that he failed to follow it.  (See Gov. Opp. at Exhibit G, Affidavit of Amy J. Standefer.)

For the foregoing reasons, Defendant Troiano is not entitled to an evidentiary hearing and Defendant Troiano's "Motion to Dismiss Indictment or, in the Alternative, to Suppress Prosecution Evidence Relating to Audiotaped Federal Detention Center Phone Calls by Defendant" (Doc. 83) is **DENIED.**

**II.  Motion to Dismiss Counts 3 and 4 of the Indictment**

   **A.   Background**

Defendant contends that the Court should dismiss Counts 3 and 4 of the Superseding Indictment because one digit of the serial number for the Colt .45 pistol that is the subject of each of those counts is handwritten.  What appear to be the initials of Assistant United States Attorney Clare E. Connors are next to

the handwritten digit.  Troiano questions when the Government corrected the Superseding Indictment by adding the handwritten digit (*e.g.*, during or after the Grand Jury proceedings).  Troiano requests that the Court permit him access to the minutes of the Grand Jury proceedings and any pertinent records or reports relating to the correction of the Superseding Indictment.

In its memorandum in opposition, the Government submitted a Declaration of Counsel by Assistant United States Attorney Clare E. Connors.  The Declaration states that during the presentation of the Superseding Indictment to the Grand Jury, both the Grand Jury and the Government discovered a typographical error in the serial number of the firearm.  Counsel corrected the serial number in front of members of the Grand Jury and initialed it accordingly.

**B.    Analysis**

Troiano has not made sufficient factual allegations to warrant disclosure of the Grant Jury minutes or other related documents, to require an evidentiary hearing, or to otherwise support his motion to dismiss.  The undisputed facts are that the Government corrected the handgun serial number in the Superseding Indictment before the Grand Jury.

Even if the Grand Jury had not received the corrected Superseding Indictment, Troiano has not put forth any facts which would support his motion to dismiss as a matter of law.  The

9

variance with regard to the handgun's serial number does not substantially affect Troiano's rights.  The gun's serial number is not an essential element of the crimes charged in Counts 3 and 4.  <u>See</u> Fed. R. Crim. P. 52(a) (variance which does not substantially affect the rights of a defendant is harmless and should be disregarded); <u>United States v. Pisello</u>, 877 F.2d 762, 765 (9th Cir. 1989)(court's finding of tax evasion in 1984 as opposed to 1985 as charged in the indictment was not a constructive amendment); <u>Heisler v. United States</u>, 394 F.2d 692, 694 (9th Cir. 1968) (permissible for court to correct denomination of counterfeit Federal Reserve Note where indictment alleged it was a $20.00 bill when in fact it was a $10.00 bill); <u>see</u> <u>generally</u> <u>United States v. Alvarez</u>, 972 F.2d 1000, 1003-04 (9th Cir. 1992)(constructive amendment of indictment only occurs when evidence produced at trial supports crime other than charged in indictment).

Only where a defendant is misled to his prejudice about the charges against him will an indictment be found inadequate.  <u>See</u> <u>United States v. Severino</u>, 316 F.3d 939, 943 (9th Cir. 2003); <u>see</u> <u>United States v. Neill</u>, 166 F.3d 943 (9th Cir. 1999) (district court properly allowed amendment of indictment to correct typographical error).  Moreover, if varying evidence is presented at trial, the Government can seek to amend the indictment to conform to the evidence.

10

For the foregoing reasons, Troiano is not entitled to the Grand Jury documents and Defendant Troiano's "Motion to Dismiss Counts 3 and 4 of the Indictment" (Doc. 84) is **DENIED**.

**III.   Motion to Dismiss Indictment or to Exclude Testimony of Catherine Symonds**

Troiano's motion is premised on the alleged disclosure of a sealed portion of an August 8, 2005 hearing before this Court. The August 8, 2005 hearing concerned Troiano's request for new counsel.  Catherine Symonds is Troiano's ex-wife and a potential Government witness.

Troiano contends that United States Marshals told Symonds about the August 8, 2005 sealed hearing when serving her with a trial subpoena and that she subsequently went to The Brown Bottle liquor store in an attempt to ascertain the circumstances surrounding the robbery.  Troiano claims this violated his Fifth Amendment due process rights to a fair trial.

Troiano has not pointed to any competent evidence to suggest that any portion of the sealed hearing was actually disclosed to Symonds.  Troiano points only to a conversation he had with his mother, Linda Corpe, on August 12, 2005.  The FDC recorded the telephone conversation.  During the conversation, Corpe told Troiano that Symonds told her that Symonds had a conversation with a government agent at the time she was served with her trial subpoena and that the agent said Troiano "keeps firing" all of

his attorneys. (See Gov. Opp. at Exhibit A, unofficial transcript of the August 12, 2005 telephone conversation between Troiano and Corpe.)

Even if true, nothing in this statement suggests the divulgence of confidential information from the August 8, 2005 hearing. The fact that Troiano's second court appointed counsel had filed a motion to withdraw and that the Court held a hearing on that motion was evident from the public record. Further, the Government has submitted an affidavit from Brian Johnson, the Special Deputy United States Marshal who served Symonds with the trial subpoena. Mr. Johnson's affidavit states that he was not present at the hearing, he did not discuss the hearing with any employees of the United States Marshal's office, and he has no knowledge from any source regarding sealed matters that transpired at the hearing. Mr. Johnson also avers that he did not attempt to influence Symonds' trial testimony in any way. (See Gov. Opp. at Exhibit B.)

Troiano has not explained how, even if a portion of the sealed hearing had been disclosed, it affected his right to a fair trial. There is no evidence that the Government tampered with prospective witnesses or otherwise engaged in outrageous conduct.

Troiano's argument with respect to Symonds' alleged conversations with employees of The Brown Bottle likewise fails.

12

Troiano has not presented any evidence to suggest that Symonds had access to, much less shared, confidential information with employees of The Brown Bottle. Troiano has not alleged, or presented any evidence to suggest, that the Government directed Symonds to discuss factual circumstances of the case with other potential witnesses.

For the foregoing reasons, Troiano is not entitled to an evidentiary hearing and Defendant Troiano's "Motion to Dismiss Indictment or to Exclude Testimony of Catherine Symonds" (Doc. 85) is **DENIED**.

**IV. Motion to Suppress Eyewitness Identification**

   **A.   Background**

Milton Agader, the owner of The Brown Bottle, identified Troiano in a photographic lineup. Troiano seeks to suppress Agader's identification of him. Troiano argues that the identification procedures were impermissibly suggestive and that Agader's identification of him was unreliable. Troiano also states that "it is believed that [Agader] was shown a photograph of Troiano prior to May 15, 2005." Troiano requests an evidentiary hearing on his motion to suppress eyewitness identification.

   **B.   Analysis**

In evaluating a motion to suppress based on suggestive pretrial procedures, the court considers: (1) whether the

identification procedure itself was unnecessarily and impermissibly suggestive; and (2) whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive.  Neil v. Biggers, 409 U.S. 188, 198-99 (1972).  Factors concerning reliability include: (1) the opportunity of the witness to view the defendant at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the suspect; (4) the level of certainty displayed by the witness at the identification procedure; and (5) the length of time between the crime and the identification.  Id. at 199-200.  If the procedure was not impermissibly suggestive, the court need not reach the second prong.

Here, Troiano does not satisfy the first prong – *i.e.*, that the procedures were unnecessarily and impermissibly suggestive. The Government attached the photographic lineup as Exhibit B to its Opposition to Defendant Troiano's Motion to Suppress Identification.  The photographic line-up depicts similar-looking, shirtless males with mustaches and bushy hair.  The photographs used for the lineup were photographs on file with the Honolulu Police Department and were in black and white.  On its face, the photographic array did not emphasize the focus on a single individual.

At the hearing, Troiano's counsel stated that he had no

14

evidence to support his belief that Agader was shown a photograph of Troiano prior to Agader's identification of Troiano in the photographic lineup.  Troiano does not assert any other basis for believing that the photographic lineup was impermissibly suggestive.

Troiano suggests that the absence of video or audio recordings makes it difficult for him to know what transpired during the photographic lineup.  At trial, Troiano's counsel will be able to cross-examine Agader and the detective who administered the photographic lineup.

These circumstances do not give rise to a "very substantial likelihood of irreparable misidentification."  United States v. Davenport, 753 F.2d 1460, 1462 (9th Cir. 1985).  Because Troiano's motion does not raise any contested issues of fact he is not entitled to an evidentiary hearing.  Because Troiano has not made a threshold showing that the identification was impermissibly suggestive, the Court need to reach the second prong of the analysis - *i.e.*, whether the identification was reliable under the totality of the circumstances.

For the foregoing reasons, Troiano is not entitled to an evidentiary hearing and Defendant Troiano's "Motion to Suppress Identification" (Doc. 77) is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendant Troiano is not entitled

to an evidentiary hearing and

    (1)   Defendant Troiano's "Motion to Dismiss Indictment or, in the Alternative, to Suppress Prosecution Evidence Relating to Audiotaped Federal Detention Center Phone Calls by Defendant" (Doc. 83) is **DENIED;**

    (2)   Defendant Troiano's "Motion to Dismiss Counts 3 and 4 of the Indictment" (Doc. 84) is **DENIED**;

    (3)   Defendant Troiano's "Motion to Dismiss Indictment or to Exclude Testimony of Catherine Symonds" (Doc. 85) is **DENIED**; and

    (4)   Defendant Troiano's "Motion to Suppress Identification" (Doc. 77) is **DENIED**.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 3, 2006.



                                  Helen Gillmor
                                  Chief United States District Judge

___

Crim. No. 05-00261 HG-01, <u>United States v. James Troiano, aka "John Klatt"</u>; ORDER ON VARIOUS PRETRIAL MOTIONS HEARD MARCH 17, 2006.